52 CCPA

### Application of Benton T. WIECHERS.
### Patent Appeal No. 7356.

United States Court of Customs and Patent Appeals.

June 24, 1965.

Rehearing Denied Oct. 12, 1965.

Smith and Almond, JJ., dissented.

————◆————

Arthur J. Hansmann, Racine, Wis., for appellant.

Clarence W. Moore, Washington, D. C. (Jere W. Sears, Washington, D. C., of counsel), for the Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH and ALMOND, Judges.

RICH, Judge.

This appeal is from the decision of the Patent Office Board of Appeals affirming the examiner's rejection of the two claims remaining in application serial No. 67,411, filed November 4, 1960, for "Method of Converting a Bank Check."

The ground of rejection sustained was that the claimed invention is unpatentable over

In affirming, the board considered the features in common presented by the appealed claims and the reference, considered the differences, and concluded:

It is our opinion that the above noted differences considered singly and collectively are not unobvious in view of the reference disclosure and the refusal to allow claims 9 and 10 is accordingly sustained * * *.

Clearly the statutory basis of this rejection is 35 U.S.C. § 103. Appellant's brief says, "The rejection is based on 'obviousness' * * *."

The claimed "method" has to do with the conduct of banking business, more specifically the operation of checking accounts based on a line of credit or agreement on the part of the bank to loan money to the holder of the account. It operates as do permissive overdrafts with an agreement by the bank to permit installment repayment of advances made. The details are best seen in the appealed claims which read as follows:

9. A method of producing and treating a promissory note, comprising the steps of recording a maximum credit limit between a bank and a customer for an account of said customer, preparing a stamp with a personalized notation thereon identifying said customer in the records of said bank and recording said notation on said records, writing a bank check in favor of a payee, affixing said stamp to said check and passing said check to said payee, presenting said check to said bank for payment and making said payment, and making a marking in said account in the amount of said check for debiting said amount to said customer on a periodic installment payment basis until said amount is paid by said customer.

10. A method of converting a bank check into a promissory note, comprising the steps of making a deposit of money and writing a checking account between a bank and a bank customer to have the latter obtain bank credit and utilize a bank check for acquiring the credit upon writing the check, preparing means bearing identification indicia such that said means can be applied to said bank check and distributing said means to said customer, recording said indicia in the records of said bank under the name of said customer, writing a bank check in favor of a payee, affixing said indentification indicia to said check at the selection of said customer when the latter desires to make a promissory note out of said check, passing said check to a payee for payment from said bank, and writing an entry in said account for debiting said account with periodic installment payments if said means is affixed to said check and for debiting said account with one full payment if no means is affixed to said check.

Pfleiderer discloses a scheme of certifying checks pursuant to which the holder of a regular checking account is issued stamps to the amount of his deposit, in various denominations, which he can affix to the check in amount sufficient to equal the amount for which it is drawn. Each stamp has his account number on it. The presence of the stamps on the check is supposed to indicate to the payee, assumed to understand the system, that there is money on deposit to cover the amount of the check and thus to act as a certification. While the purpose is different from appellant's, the reference discloses the mechanical feature of his claims, defined in claim 9 as "a stamp with a personalized notation thereon identifying said customer in the records of said bank" and also discloses the steps of "writing a bank check in favor of a payee, affixing said stamp to said check and passing said check to said payee, presenting said check to said bank for payment and making said payment * * *." In fact, except for the stamp, the last-mentioned steps are all conventional and so notoriously old and

well-known that no reference is required to show them.

In arguing that the differences between his system and the disclosure of the reference would not be obvious, appellant begins by saying,

> Appellant's Claims 9 and 10 define a method of establishing and practicing an installment credit account with a bank and to have it in effect simultaneous[ly] with a conventional checking account, while both accounts utilize conventional checks, and the conventional checking system is utilized simultaneously. Thus, a customer may write a conventional bank check, and have it honored as either a conventional check or as a promissory note.

This is a revealing argument. First, it admits that the checking account is "conventional" and the checks are "conventional." Second, it becomes quite clear that the customer really has two "accounts" with the bank, a regular checking account and a loan or installment credit account.[1] Third, it is apparent that the bank must know—as it always has to know when a customer has a plurality of accounts—which account is being drawn against. It knows this from the stamp or other "indicia" which the customer "affixes" to the check. We do not see in this anything unobviously different from writing the word "special" or putting some other account indication on a check. In any event, the specific device of an adhesive stamp bearing the account number is shown by the reference to be an old device. The board found nothing unobvious in appellant's calling his check with a stamp on it a "promissory note" whereas the reference calls the same a "certified check" and we are in accord. Finally, appellant refers to "honoring" a check with an indication affixed to it "as a promissory note." The terminology here seems confused. Such a check is not *honored* by the bank as a promissory note. It is honored *as a check* in that the money is given to the payee, just as Pfleiderer's check is honored. It is thereafter treated *by the bank* as though it were a note drawn by the customer in favor of the bank and it is the customer who has to "honor" it as such. This is merely a matter of the contractual relations between the bank and its customer with whom it has agreed to advance money when, as, and if called for by checks drawn on the loan account. The checks remain checks. The customer must repay the advances. We see nothing unobvious, or novel, in this. We agree with the board that this is merely a matter of "private arrangement between the bank and the customer" and not an unobvious difference from the reference.

As to the concluding limitation of the appealed claims that the customer is debited for all money borrowed in a periodic installment payment account, the examiner said, "It is considered immaterial whether the bank chooses to collect in installments." We likewise consider that claimed feature to be immaterial to patentability, presumably for the same reason as the examiner, though he did not state his reason. Repayment of loans in installments, however, has become one of the commonest business practices in the United States long prior to appellant's 1960 filing date. We seem to recall that an excess of installment credit was considered to be one of the primary causes of the Great Depression which commenced in 1929. No reference need be cited by the Patent Office to show lack of novelty in such a notoriously old business arrangement as the repayment of loans in installments. Appellant's brief makes no assertion of novelty in the installment repayment feature, the board did not even consider it, and appellant's specification contains no mention of it (see fn. 1, supra). In support of the examiner's position, we deem ourselves justified in taking judicial notice of its

---

1. Appellant's claims call for installment payment of the loan and he argues about it but, oddly, his specification, as it appears in the record, never mentions this feature.

antiquity, even without a reference, under the American Law Institute's Model Code of Evidence (1942) of which Rule 802 states, in part:

> The judge may of his own motion take judicial notice of * * * (b) specific facts so notorious as not to be the subject of reasonable dispute * * *.

The examiner put the appellant on notice that installment repayment of money advanced against stamp-bearing checks was not a difference conducive to patentability and appellant has done nothing to meet that point.

■ We have reviewed the board's careful consideration of all of the asserted differences between the claimed invention and the disclosure of the reference and we fully agree with the Patent Office that in view of the disclosures of Pfleiderer the appealed claims define only subject matter which would have been obvious, at the time the invention was made, to a person having ordinary skill in the art to which said subject matter pertains, which is, in this case, the art of banking.[2]

The decision of the board is affirmed.

Affirmed.

WORLEY, C. J., concurs in the result.

SMITH, Judge (dissenting), with whom ALMOND, Judge, joins.

Initially, it should be made clear that what Wiechers is claiming here is, beyond question, *a method of doing business*. I agree with the majority that the issue of patentable subject matter under 35 U.S.C. § 101 is not before us. The only question is whether, on the present record, appellant's claimed method of doing business would have been *obvious* to one of ordinary skill in the art at the time appellant invented it.

I likewise agree with the majority regarding appellant's admission that checks and checking accounts are conventional. The Pfleiderer patent discloses these admittedly conventional concepts. The only other aspect of the Pfleiderer patent which has even the remotest bearing on the obviousness of appellant's claimed method of doing business is the concept of affixing stamps to a check for identification purposes.

To this disclosure, the majority adds several well known facts of business and banking life, and reaches the conclusion that appellant's claimed method of doing business *would* have been obvious. Thus the majority mentions "a line of credit" or an "agreement on the part of the bank to loan money;" "permissive overdrafts with an agreement by the bank to permit installment repayment;" "a periodic installment payment account" and "repayment of loans in installments."

I am in complete agreement with the majority that the individual differences between appellant's claimed method and the certified check patented by Pfleiderer are all fairly conventional steps and, when considered individually and out of context, may be said to be "obvious." But it is not obviousness of the *differences* which section 103 contemplates, but obviousness of the claimed subject matter *as a whole*. And appellant's claimed subject matter as a whole is a unique method of doing business which involves short-circuiting that marvel of modern-day society, the installment charge account, and its ubiquitous companion, the credit card. With appellant's scheme the consumer need not establish an account with each retailer he wishes to buy from; he need establish but one account, with the bank, and need make periodic installment payments to but one creditor, the bank.

---

**2.** We note that we are not here concerned with whether systems of banking are within the categories of patentable invention as enumerated in 35 U.S.C. § 101. The examiner rejected the claims as not within that section but the board, on grounds not entirely clear to us, said,

"We do not sustain the refusal to allow claims 9 and 10 on the ground of non-statutory basis * * *." That rejection is therefore not before us. This opinion should not be regarded as a precedent on that question.

Where, in the sum total of the prior art, including the conventional banking and business practices mentioned by the majority, is there even the slightest suggestion of such an ingenious scheme? I would not, of course, require a reference to meet every "nut and bolt" of the claim. But when, as in the instant case, the art is devoid of the barest suggestion of the very *heart* of a claimed idea, I feel the step from what the art *does* show to the holding of *obviousness* is over-long, and one not countenanced by section 103.

The majority states that "Repayment of loans in installments * * * has become one of the commonest business practices in the United States long prior to appellant's 1960 filing date." I agree. And I would not limit it to the United States nor to any time short of remotest antiquity, for money lending is surely one of the world's oldest businesses. The same is true with the other conventional practices mentioned by the majority— they are hoary with age. Note also the date of Pfleiderer's patent. In view of this, I ask the "obvious" question: If appellant's method of doing business is so clearly obvious, why does the record not show it? I would reverse.